UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA B. LUBY, | ) | CASE NO. 1:22CV139 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JAMES W. IRWIN, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #25) of Plaintiff Donna B. Luby for Partial Summary Judgment and the Cross-Motion (ECF DKT #31) of Defendant James W. Irwin for Partial Summary Judgment. For the following reasons, Plaintiff's Motion is granted and Defendant's Motion is denied.

**I. FACTUAL BACKGROUND**

Plaintiff instituted this action with a Verified Complaint (ECF DKT #1) on January 26, 2022. On December 7, 2022, the Court consolidated the captioned case with 1:22CV2041 - *James W. Irwin v. Donna B. Luby*, which was transferred from the United States District Court of South Carolina.

On April 26, 2004, Defendant purchased a house at 37 Wexford on the Green, known as Lot 33 Wexford on the Green, Hilton Head, South Carolina 29928, for $639,000.00. Defendant financed much of the purchase price by obtaining a loan from RBC Centura Bank in the principal amount of $415,350.00 and a loan from Mortgage Network, Inc. in the principal amount of $31,950.00. (ECF DKT #31-2 and ECF DKT#31-3 respectively).

On May 4, 2004, Defendant transferred by General Warranty Deed an undivided one-half interest in the Property to Plaintiff, subject to the two mortgages. (ECF DKT #31-4).

Plaintiff and Defendant entered into an Agreement Between Tenants in Common, with an effective date of May 7, 2004. (ECF DKT #25-1). They acknowledged that no other contract, understanding or agreement governed their interests, rights and obligations in the Property.

In September of 2020, the Property was sold to a third-party buyer for the sale price of $530,000.00. By that time, Defendant had satisfied the second mortgage. As reflected in the HUD-1 Settlement Statement dated September 15, 2020, and after deductions for closing expenses, attorney's fees, real estate taxes and the payoff of the first mortgage loan, the net amount payable to the sellers was $178,186.79. (ECF DKT #31-6). This amount was placed in escrow and remains undistributed pending the resolution of this litigation.

In her Complaint, Plaintiff brings the following claims against Defendant: Count I - Declaratory Judgment; Count II - Breach of Contract; and Count III - Wrongful Conversion. Defendant asserts Counterclaims: Count One - Declaratory Judgment; Count Two - Rescission of Agreement; Count Three - Breach of Contract; and Count Four - Unjust Enrichment.

Plaintiff moves for Partial Summary Judgment, asking the Court to declare as a matter of law that the Agreement Between Tenants in Common is clear and unambiguous regarding the division and use of the proceeds from a third-party sale. Though she is not seeking a monetary judgment at this time, Plaintiff asks the Court to find that Defendant must reimburse her for the amount of sale proceeds used to pay off his remaining mortgage loan.

Defendant argues that the Agreement is ambiguous; and that Plaintiff is not entitled to reimbursement of the mortgage loan payoff amount because of waiver or modification as evidenced by her signature on the HUD-1 Settlement Statement. Defendant also moves for judgment, in his own right, that he did not breach the Agreement, did not wrongfully convert any of Plaintiff's funds and that Plaintiff owes him for expenses he incurred to manage and maintain the Property.

The Agreement Between Tenants in Common provides in pertinent part:

* * * * * *

¶ 3. In the event the parties agree to sell the Property to a person who is not a signatory to this Agreement, . . . , then the proceeds of the sale shall be allocated as follows:

(a) First, to pay costs of the sale, including any broker's commission, title and escrow costs, legal fees, and related expenses;

(b) Next, for payment of current real property taxes and assessments on the Property and of those liens and encumbrances which have been created by the acts of all the parties to this Agreement, and of such liens or encumbrances that have been assessed and levied against the Property primarily, and not against any party as an

individual; and

(c) Next, for payment to the parties of the remaining balance, in the following proportions:

    (1) Fifty percent (50%) to Luby; and

    (2) Fifty percent (50%) to Irwin.

* * * * * *

¶ 4. The Property has been purchased with funds contributed by Luby and Irwin on a 50/50 basis, and in part by Irwin obtaining (a) a loan from RBC Centura Bank ("First Lender") in the principal amount of $415,350.00, and (b) a loan from Mortgage Network, Inc. ("Second Lender") in the principal amount of $31,950.00. The obligations to repay such loans are evidenced by promissory notes from Irwin to Lender, which promissory notes are secured by a first mortgage and a second mortgage, respectively, encumbering Irwin's interest in the Property. Notwithstanding the provisions of Paragraph 5 below, as between the First Lender and the Second Lender and Irwin, Irwin shall be solely responsible to repay such loans.

* * * * * *

¶ 5. Luby and Irwin shall be responsible for management of the Property, as the managing co-tenants (the "Managing Co-Tenants"). The Managing Co-Tenants will not be entitled to a salary for acting as Managing Co-Tenants, but will be entitled to be reimbursed for all his/her expenses incurred in managing the Property. . . .

(a) Each Managing Co-Tenant agrees:

\* \* \* \* \* \*

(3) To pay all costs and expenses incurred on the Property, including installment payments on the above-described promissory note;

\* \* \* \* \* \*

(6) To furnish an annual income and expense statement for the Property to the other co-tenant after the end of each calendar year.

(b) Luby and Irwin will share the expenses incurred from the Property on a 50/50 basis.

\* \* \* \* \* \*

(d) Net income realized from the Property will be paid to the parties on a quarterly basis, within 30 days following the calendar quarter in which such net income was realized. Net income will be divided in the following shares:

(1) Fifty percent (50%) to Luby; and

(2) Fifty percent (50%) to Irwin.

\* \* \* \* \* \*

¶ 7. No improvements to the Property shall be made by either party which improvement has a cost in excess of $2,000.00 without first having obtained the prior written consent from the other party. . . .

## II. LAW AND ANALYSIS

**Summary Judgment Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Applicable Law**

The within Complaint was brought on the basis of diversity jurisdiction. In diversity cases, a federal court must rely upon the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013); *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). A federal court exercising diversity jurisdiction must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). If the issue has not been decided, a federal court "must 'anticipate how the relevant state's highest court would rule' " and may rely on the state's intermediate appellate court decisions, along with other persuasive authority, in making this determination. *Id.* (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)).

**Contract Construction**

The construction of a written contract is a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995); *Alexander v. Buckeye Pipe* Line *Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. The court's primary objective in construing a contract is to ascertain and give effect to the parties' intent, which is presumed to reside in the contractual language used. A*lternatives Unlimited–Special, Inc. v. Ohio Dept. of Edn*., 168 Ohio App.3d 592, 861 N.E.2d 163, 2006–Ohio–4779, ¶ 20; *Fujitec Am., Inc. v. AXIS Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743

(S.D. Ohio 2020) (quoting *Goodyear Tire & Rubber Co. v. Lockheed Martin Corp.*, 622 F. App'x 494, 497 (6th Cir. 2015)).

When contract terms are clear and unambiguous, a court may not create a new contract by finding an intent not expressed in the clear contractual language. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 1992–Ohio–28, citing *Alexander*, 53 Ohio St.2d at 246, 374 N.E.2d 146. To give such effect, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013); see also *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (Ohio 1997).

A court should read and consider the contractual provisions as a whole and not in isolation. *Foster Wheeler Enviresponse*, 78 Ohio St.3d at 361. "Courts should not interpret contracts in a way that renders at least one clause superfluous or meaningless." *Transtar Elec. Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, ¶ 26 (2014).

It is also a well settled canon of contract construction that specific language prevails over general contract language. See *Monsler v. Cincinnati Cas. Co.*, 74 Ohio App.3d 321, 330, 598 N.E.2d 1203, 1209 (Ohio Ct. App. 1991) ("[a] specific provision controls over a general one."); see also *BP Chems., Inc. v. First State Ins. Co.*, 226 F.3d 420, 426–27 (6th Cir. 2000) (explaining the principle that "more specific provisions control over general ones").

**<u>Plaintiff's Motion for Partial Summary Judgment</u>**

Reading the provisions of the Agreement Between Tenants in Common (ECF DKT

#25-1) as a whole and giving the terms used their ordinary meaning, the Court declares as a matter of law that the Agreement is not ambiguous.  Further, the Court finds that the mortgage repayment amount of $312,671.87 should not be deducted in calculating the 50% allocation of sale proceeds owed to Plaintiff.

The unambiguous language of ¶ 4 of the Agreement provides that the obligation to repay the mortgage loans is "evidenced by promissory notes from Irwin to Lender." (See ECF DKT #31-2 and ECF DKT #31-3).  Defendant James W. Irwin is the only borrower identified on the mortgage notes and only his signature is found there. (*Id*.).  The Agreement has not been amended to reflect that the notes were ever re-negotiated with the Lenders or that Plaintiff ever assumed any obligation on the notes.  The last line of ¶ 4 reads: "Notwithstanding the provisions of Paragraph 5 below, as between the First Lender and the Second Lender and Irwin, Irwin shall be solely responsible to repay such loans."

Any question about whether the wording found in ¶ 3, "liens or encumbrances," refers to the mortgages is resolved by applying the contract construction rule that a specific provision prevails over a general one.  *Monsler*, 74 Ohio App.3d at 330.  Paragraph 3 does not define "liens or encumbrances," but ¶ 4 plainly describes the mortgage notes and Defendant's sole obligation to repay them.  Therefore, ¶ 4 controls.

In his Opposition, Defendant asks the Court to consider his intent; to find ambiguity; and to find that the Agreement was either modified or Plaintiff waived objection to the mortgage payoff.

Defendant argues his intent in signing the Agreement was, that in the event the sale proceeds were insufficient to satisfy the mortgage balances, then he would be responsible for

the remaining balances. (Irwin Affidavit, ECF DKT #31-1 at ¶ 10). The Court should not and will not create a new contract by finding an intent not expressed in the plain language of the Agreement. *Shifrin*, 64 Ohio St.3d at 638. Carefully reviewing the Agreement, the Court is unable to find any provision conditioning Defendant's obligation upon the insufficiency of the Property sale proceeds. One of the opening recitals in the Agreement reads:

> The parties acknowledge that they have not entered into any other contract, understanding or agreement, whether express, implied in fact, or implied in law, with respect to their respective property in, and their contractual rights and obligations pertaining to, the Property.

Thus, a plain reading of the contract offers no support for Defendant's "understanding" of his mortgage liability.

To bolster his contention that the Agreement is ambiguous, Defendant directs the Court's attention to ¶ 4 and ¶ 5. In ¶ 4, the Agreement states that Defendant is "solely responsible to repay such loans." However, ¶ 5 recites that each party agrees to pay "installment payments on the above-described promissory note" and to share "expenses incurred from the Property on a 50/50 basis."

"Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003) (citation omitted); see *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009).

Looking at the two specific provisions as Defendant suggests, the Court finds that Defendant omits a significant phrase in ¶ 4: "Notwithstanding the provisions of Paragraph 5

below. . ." A dictionary definition of the preposition, "notwithstanding," is "despite" or "regardless of." Therefore, Defendant is "solely responsible" *despite* the parties' acceptance of shared responsibilities set forth in ¶ 5. There is no ambiguity within the "four corners" of the Agreement.

Defendant's final contention is that Plaintiff waived any objection to the payoff of the mortgage using sale proceeds. According to Defendant, Plaintiff authorized the mortgage satisfaction and modified the parties contractual obligations when she signed the HUD-1 Settlement Statement which recites:

> I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

In her Affidavit (ECF DKT #35-9 at ¶ 6), Plaintiff insists that she did not agree to use her share of the proceeds to pay the mortgage debt nor that the Agreement Between Tenants in Common was modified in any way.

There must be a clear, unequivocal, decisive act to prove waiver or modification. *Special Learning, Inc. v. Step by Step Academy, Inc*., No. 2:14-cv-126, 2015 WL 10990267 at *6-7 (S.D. Ohio, Sept. 17, 2015) (citing *City of Lancaster v. Flagstar Bank*, 789 F. Supp.2d 873, 881 (S.D. Ohio 2011) (quoting *White Co. v. Canton Transp. Co.*, 131 Ohio St. 190, 198 (Ohio 1936)). Waiver must be by a "clear, unequivocal, decisive act," or course of conduct proven by "clear and convincing evidence." *Star Leasing Co. v. G&S Metal Consultants*, No. 08AP-713, 2009 WL 714146 at *7 (Ohio Ct. App. 10th Dist. Mar. 19, 2009). Moreover, as a general principle, a contract cannot be modified unilaterally. *Star Leasing*, 2009 WL 714146

at *7.

The signed verification at the end of the HUD-1 Settlement Statement is not a clear, unequivocal modification or waiver of the terms in ¶ 4 of the Agreement. There is no mention of the Agreement in the executed Settlement Statement. The Settlement Statement language merely acknowledges that the figures are accurate. Furthermore, although Plaintiff admits that both she and Defendant desired to transfer the Property free and clear of encumbrances (ECF DKT #35 at 7); that is not to say that she conceded the use of her share of the proceeds for that purpose or abandoned her contractual right to a full 50% share without any deduction of Defendant's loan repayment. Nothing in the HUD-1 Settlement Statement reflects Plaintiff's assumption of joint liability on the mortgage note. Furthermore, the Court finds that both the Agreement and the Settlement Statement can stand alone and can exist independently.

In conclusion, Defendant has failed to provide clear and convincing evidence of a knowing waiver or of a mutual modification of the Agreement Between Tenants in Common.

Therefore, Defendant's arguments in opposition to Plaintiff's Partial Motion for Summary Judgment are unpersuasive. There is only one reasonable meaning which can be drawn from the words the parties chose in their Agreement. That is, Defendant is solely responsible for the repayment of the RBC Centura Bank mortgage loan and Plaintiff's 50% share of the proceeds should not be reduced by the repayment amount.

**Defendant's Cross-Motion for Summary Judgment**

In addition to asserting that the Agreement Between Tenants in Common is ambiguous, Defendant argues that Plaintiff cannot establish her Conversion Claim and that Plaintiff is in breach for failing to reimburse him for expenses as required by ¶ 5 of their

contract.

In her Complaint for Conversion, Plaintiff alleges: "Irwin intentionally and improperly interfered with Luby's rights with respect to the identifiable fund(s) of money when he distributed amounts to pay the Loans and to reimburse himself for prior Loan payments and interest, and in placing the remainder in escrow, all without Luby's consent." (ECF DKT #1 at ¶ 28).

Under Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592; citing *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 175.

Defendant contends that he never had custody or control over the sale proceeds. Defendant offers the Affidavit of Jack H. Biel, the attorney for the purchaser of the Property.

Biel states: "As the buyers' attorney, at the closing of the sale, I received the purchase price and purchase costs. With those purchase amounts, I caused to be paid all of the closing costs pursuant to the Settlement Statement (HUD-I) dated September 15, 2020." In addition, Biel "did not have any communications, whether oral or written, with either Donna Luby or James Irwin, only with the attorney acting on their behalf, regarding the payment of the closing costs, including the payoff of mortgage." (ECF DKT #31-9 at ¶¶ 3 & 4). Biel concludes: "Following the payment of the closing costs, I caused the seller's net sale proceeds totaling $178,186.79, to be wired to Charles H. Wiseman, Esq., the attorney representing Donna Luby and James Irwin as sellers." (*Id*. at ¶ 6). A copy of the wire transfer is attached as ECF DKT #31-12.

Plaintiff does not address the identification of Biel as hers and Defendant's attorney for this transaction. Neither Defendant nor Plaintiff discuss what instructions were given to their counsel as to the handling of the sale proceeds.

Because there are genuine factual issues about the disposition of the funds; and whether Defendant, rather than the parties' joint counsel, exercised control over the money to the exclusion of Plaintiff's rights, Defendant is not entitled to judgment on the Conversion Claim.

Additionally, Defendant seeks partial summary judgment on his claim for Breach of Contract. Defendant alleges that Plaintiff is in breach for failing to reimburse him for expenses incurred on the property, including taxes, mortgage installment payments, repairs and dues. Plaintiff was obligated to pay for half of the expenses pursuant to ¶ 5(a)(3) of the Agreement Between Tenants in Common.

In his Affidavit (ECF DKT #36-1 at ¶ 6), Defendant states:

I am seeking to recover 50% of the repair/management expenses I incurred from 2015-2020, which expenses totaled $276,121. An annual breakdown of those expenses is as follows:

2015 = $52,819.00

2016 = $37,748.00

2017 = $58,894.00

2018 = $15,803.00

2019 = $52,524.00

2020 = $58,333.00

Defendant provides no supporting documentation of what these amounts were spent for, nor any calculation of the parties' respective shares. In addition, ¶ 5(a)(6) of the Agreement requires each party to provide the other with an annual income and expense statement. There is no evidence that either Plaintiff or Defendant did so.

Further, ¶ 7 of the Agreement provides: "No improvement to the Property shall be made by either party which improvement has a cost in excess of $2,000.00 without first having obtained the prior written consent from the other party." No evidence has been offered which shows that Defendant obtained Plaintiff's consent for any expenses exceeding $2,000.00. In her opposing Affidavit (ECF DKT #35-9), Plaintiff swears that she does not owe Defendant any amount for unreimbursed expenses.

Defendant has failed to conclusively show that no genuine issue of material fact exists on his claim for Breach of Contract. Therefore, Defendant's Cross-Motion is without merit.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #25) of Plaintiff Donna B. Luby for Partial Summary Judgment is granted and the Cross-Motion (ECF DKT #31) of Defendant James W. Irwin for Partial Summary Judgment is denied.

**IT IS SO ORDERED.**

**DATE: 12/14/23**

                                           s/Christopher A. Boyko
                                           **CHRISTOPHER A. BOYKO**
                                           **United States District Judge**